**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. |
| | : | |
| v. | : | Violation: |
| | : | 18 U.S.C. § 1344(1), 1344(2) |
| KATHERINE EMMA ROSS, | : | (Bank Fraud) |
| | : | |
| Defendant | : | Forfeiture: |
| | : | 18 U.S.C. § 982(a)(2)(A), |
| | : | 21 U.S.C. § 853(p) |

**STATEMENT OF OFFENSE**

The United States of America, by its attorney, the United States Attorney for the District of Columbia, respectfully submits the following Statement of Offense in the above-captioned case.

The following proffer of the government's evidence is intended only to provide the Court with enough evidence to satisfy the mandate of Rule 11(b)(3) of the Federal Rules of Criminal Procedure. This proffer is not intended to be a disclosure of all the evidence available to the United States nor, to the extent it makes representations concerning anything the defendant said, is it a recitation of all that the defendant said.

The parties stipulate to the following facts.

**BACKGROUND**

1. At times, the defendant Katherine Emma Ross resided in Washington, D.C.

2. Financial-Institution-One was a financial institution within the meaning of 18 U.S.C. § 20, and had bank branches in Washington, D.C., Maryland, and Virginia. Financial-Institution-One's deposits were insured by the Federal Deposit Insurance Corporation.

3. Victim-Law-Firm was a small law firm in Washington, D.C., owned by Person A. The Victim-Law-Firm and Person A maintained three separate Financial-Institution-One bank

accounts ending in 7628, 3331, and 9144. The account ending in 7628 was the firm's Interest on Lawyer Trust Account ("IOLTA").

4. Ross was employed as an hourly employee by the Victim-Law-Firm in a non-lawyer capacity. Part of her duties included serving as an office manager.

## THE BANK FRAUD SCHEME

5. From as early as August 2016 through in or about June 2020, within the District of Columbia and elsewhere, Ross participated in a scheme in which she embezzled hundreds of thousands of dollars from the Victim-Law-Firm by means of materially false and fraudulent pretenses and representations.

6. Ross, without permission of the Victim-Law-Firm or Person A, wrote checks to herself from the Victim-Law-Firm and Person A's Financial-Institution-One accounts ending in 7628, 3331, and 9144 in amounts that she was not owed; forged signatures on those checks; and cashed the checks at Financial-Institution-One Branches in the District of Columbia, Virginia, and Maryland. Ross also deposited checks into at least one separate personal bank account that she maintained at a different financial institution ("Financial-Institution-Two").

7. For example, on or about October 10, 2019, without the permission of Person A or the Victim-Law-Firm, Ross cashed a check that she wrote to herself from the Victim-Law-Firm's IOLTA Account in the amount of $1,975. She wrote "Compensation" in the description line of the check and cashed it at a Financial-Institution-One branch located at 601 Pennsylvania Avenue, N.W., Washington, D.C. Ross was not entitled to those funds.

8. In addition to the $1,975 check, Ross cashed at least eight other "compensation" checks at Financial-Institution-One in October 2019, including two while Person A was hospitalized from October 21, 2019, through October 26, 2019. Financial-Institution-One honored

the nine checks even though they totaled more than $17,000, were drawn from the Victim-Law-Firm and Person A's three Financial-Institution-One accounts, were cashed three to four days apart, and were cashed at multiple branches. The following chart provides details about the "compensation" checks that Ross cashed in October 2019.

| **On or About Date Check Cashed** | **Amount** | **Description** | **Account** |
|---|---|---|---|
| 10/3/2019 | $1,975.00 | Compensation | X3331 (Operating) |
| 10/7/2019 | $1,875.00 | Compensation | X9144 (Personal) |
| 10/10/2019 | $1,975.00 | Compensation | X7628 (IOLTA) |
| 10/15/2019 | $1,950.00 | Compensation | X3331 (Operating) |
| 10/17/2019 | $1,975.00 | Compensation | X3331 (Operating) |
| 10/21/2019 | $1,950.00 | Compensation | X9144 (Personal) |
| 10/24/2019 | $1,975.00 | Compensation | X3331 (Operating) |
| 10/28/2019 | $1,950.00 | Compensation | X9144 (Personal) |
| 10/31/2019 | $1,980.00 | Compensation/ reimbursement | X7628 (IOLTA) |

9.      As part of the bank fraud scheme, Ross presented checks at various branches. For example, on October 10, 2019, she cashed the $1,975 check from the Victim-Law-Firm's IOLTA Account at a Financial-Institution-One branch located at 601 Pennsylvania Avenue, NW, Washington, D.C.  On October 15, 2019, she cashed the $1,950 check from the Victim-Law-Firm's Operating Account at a Financial-Institution-One branch located inside the Giant Food supermarket at 3521 East-West Highway in Hyattsville, Maryland.  On October 31, 2019, she cashed the $1,980 check from the Victim-Law-Firm's IOLTA Account at a Financial-Institution-One branch located at 1331 Pennsylvania Avenue, NW, Washington, D.C.

10.     As part of the scheme, Ross also cashed checks at other Financial-Institution-One branches, including ones located at 833 7th Street NW, Washington, D.C.; 1050 Connecticut Avenue, NW, Washington, D.C.; and 3558 S. Jefferson Street, Falls Church, Virginia. She also deposited checks at Financial-Institution-Two, where Ross maintained at least one account.

11. In addition to losing the embezzled proceeds, Person A ended up paying payroll taxes on some of the funds that Ross stole because Ross disguised embezzled funds as legitimate compensation.

12. Ross' scheme was not limited to simply cashing "compensation" checks for money which she had not earned. She also cashed checks payable to herself that included "Cash for [Person A]" in the description line.

13. In addition to embezzling money by writing checks to herself, Ross also stole funds from Person A by linking the Victim-Law-Firm's Operating Account to a personal credit card account offered through Financial-Institution-Three; Ross opened the credit card in June 2019. From July 2019 through August 2020, unbeknownst to Person A, Ross caused approximately $7,264 to be transferred from the Victim-Law-Firm's Operating Account to pay her personal credit card expenses. This included transfers made after Person A terminated her on June 26, 2020. Ross was not authorized to do that, nor was Ross entitled to the funds used to pay her personal expenses.

14. In an October 8, 2020, interview with law enforcement agents, Ross admitted that she embezzled funds from the Victim-Law-Firm and Person A.

15. Person A suffered a significant financial hardship because of Ross' embezzlement scheme.

16. The parties stipulate that Ross stole at least $320,000 from the Victim-Law-Firm and Person A through these various means. Had this matter gone to trial, the parties also stipulate that the actual loss amount could have been much higher. At trial, the government would have detailed Ross' frequent trips to various Financial-Institution-One branches and the surprising ease with which Financial-Institution-One allowed her to continue to cash checks made payable to herself from the Victim-Law-Firm's three accounts despite her criminal behavior.

17. Ross admits that the proceeds from her bank fraud scheme that she obtained have been dissipated by her and cannot be located upon the exercise of due diligence; have been transferred or sold to, or deposited with, a third party; and/or have been placed beyond the jurisdiction of the Court.

Respectfully Submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

By: _____
KONDI J. KLEINMAN
Assistant United States Attorney
California Bar No. 241277
Fraud Section
555 Fourth Street, N.W
Washington, D.C. 20530
(202) 252-6887
Kondi.Kleinman2@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charge against me. It does not include all of the facts known to me regarding this offense. I make this statement knowingly and voluntarily and because I am, in fact, guilty of the crime that is charged. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of Offense fully.

I read every word of this Statement of Offense. Pursuant to Federal Rule of Criminal Procedure 11, after consulting with my attorney, I agree and stipulate to this Statement of Offense, and declare under penalty of perjury that it is true and correct.

Date: 3/18/21

KATHERINE EMMA ROSS
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of Offense and have reviewed it with my client fully. I concur in my client's desire to adopt and stipulate to this Statement of the Offense as true and accurate.

Date: 3/18/2021

*Ubong E. Akpan*

UBONG AKPAN, Esq.
Counsel for Defendant Katherine Emma Ross