UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL CASE NO. 21-231-RBW |
| | : | |
| v. | : | |
| | : | |
| KATHERINE EMMA ROSS, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

Defendant Katherine Emma Ross embezzled hundreds of thousands of dollars from her former employer over a several-year period by, among other things, writing checks to herself in amounts that she was not owed and then cashing them. She exploited the trust that the victim placed in her, going so far as to cash two checks while the victim was hospitalized. Unfortunately, the victim suffered a substantial financial hardship as a result of the defendant's conduct, and Ross' prior assertion to the victim that she was scheduled to inherit a large sum of money that she could use to repay some of the funds she stole unfortunately has not proven true. The government recommends that the Court sentence the defendant to 33 months in prison, the bottom of the guidelines, followed by three years of supervised release. Such a sentence would be sufficient but not greater than necessary to comply with the purposes of sentencing.

**I.   Background**

From as early as August 2016 through the summer of 2020, Ross engaged in a scheme in which she embezzled hundreds of thousands of dollars from the victim. Ross wrote checks to herself from three of the victim's PNC Bank accounts, forged signatures on those checks, and cashed checks at PNC branches in the District of Columbia, Maryland, and Virginia.[1] For

---

[1] The three PNC accounts were the Victim-Law-Firm's Operating account, the Victim-Law-Firm's IOLTA account, and Person A's personal account. Person A owned the Victim-Law-Firm.

example, in October 2019, she successfully cashed at least nine checks totaling more than $17,000, including two while the victim was hospitalized.

The defendant's scheme was not limited to simply cashing checks that she wrote to herself. She also stole funds by linking one of the victim's bank accounts to her personal credit card and then fraudulently transferring funds from the victim's account to pay off her credit card. She made such transfers even after the victim fired her on June 26, 2020.

On October 8, 2020, during an interview with law enforcement agents, Ross confessed to embezzling funds.

The defendant's fraud seemed motivated predominantly because of her substance abuse addiction. *See* PSR ¶ 78-80. Unfortunately, her battle with drugs is a daily struggle. She tested positive for morphine on June 10, 2021, and admitted to snorting heroin the day before her positive test. PSR ¶ 81. To her credit, she has made efforts at addressing her drug addiction since the July 7, 2021, status hearing.

Ross told the presentence report writer that she feels horrible for her conduct and abusing the trust that the victim placed in her, noting, "Sometimes I wish I could win the lottery and give that to [the victim] and make everything better." PSR ¶ 27. The government believes Ross is in fact remorseful and wishes she could undo the damage that she has done.

Ross represented to the victim on multiple occasions that she anticipated inheriting money that had been placed into a trust for her by a family member. *Cf.* PSR ¶ 96. The victim has always been hopeful that a sizeable portion of the embezzled funds might be repaid through the defendant's inheritance. Unfortunately, both the presentence investigation and the government's

investigation have revealed that no such pot of money awaits the defendant, severely limiting the victim's ability to recoup funds from her. *Id.*[2]

### II.     Guidelines

The parties and the presentence report writer agree that the defendant's offense level under the U.S. Sentencing Guidelines ("USSG") is 18. The base offense level for bank fraud is seven pursuant to USSG §2B1.1(a)(1). Because the defendant embezzled at least $320,000, the base offense is increased twelve levels pursuant to USSG §2B1.1(b)(1)(G). An additional two-level increase is warranted because of substantial financial hardship pursuant to USSG §2B.1(b)(2)(A)(iii). The adjusted offense level of 21 is then decreased by three points because of the defendant's timely acceptance of responsibility pursuant to USSG §3E1.1.

The government agrees with the presentence investigation report writer that the defendant is in Criminal History Category III based on her prior criminal convictions and the fact that she committed the instant offense while under a criminal justice sentence. *See* PSR ¶ 41, 44, 48, and 50, and page 36 (Probation Officer's Response to Defense Objection to Paragraphs 48 and 50).

The defense objected to Ross receiving one criminal history point based on an offense she committed in 2009 soon after her eighteenth birthday. *See* PSR ¶ 41. The defense also objected to Ross receiving two criminal history points for committing the bank fraud scheme while under a criminal justice sentence.

With respect to the offense committed in 2009, because Ross was eighteen at the time that she committed the offense and it was committed within ten years of the bank fraud scheme for

---

[2] The government anticipates that Ross will provide it with a $3,000 cashier's check in partial satisfaction of her financial obligations prior to being sentenced.

which she is before this Court, the presentence report properly assigned her one criminal history point. *See* PSR ¶ 41; USSG §§ 4A1.1(c) and 4A1.2(e)(2).

The presentence report also properly added two criminal history points because Ross was under a criminal justice sentence when she committed the bank fraud scheme. The Guidelines state, "Add 2 points if the defendant committed the instant offense while under any criminal justice sentence[.]" USSG §4A1.1(d). Application Note 4 explains that "a 'criminal justice sentence' means a sentence countable under §4A1.2 [] having a custodial or supervisory component, although active supervision is not required," and thus "unsupervised probation [is] included[.]" In July 2017, Ross was sentenced in Arlington County General District Court to two concurrent suspended sentences of 180 days for drug-related offenses. PSR ¶ 48. The probation officer who drafted the presentence report spoke with the Commonwealth Attorney's Office, which advised that Ross "complied with the *conditions* ordered at sentencing by the required date." PSR ¶ 50 n.3 (emphasis added). Moreover, section 19.2-306(A) of the Virginia Code provides:

> In any case in which the court has suspended the execution or imposition of sentence, the court may revoke the suspension of sentence for any cause the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court. If neither a probation period nor a period of suspension was fixed by the court, then the court may revoke the suspension for any cause the court deems sufficient that occurred within the maximum period for which the defendant might originally have been sentenced to be imprisoned.

Accordingly, Ross' convictions in July 2017 and corresponding concurrent suspended sentences qualify as a criminal justice sentence pursuant to USSG §4A1.1. *See United States v. Brown*, 909 F.3d 698, 700-01 (4th Cir. 2018) (noting that a defendant who was not under active supervision, but who was still subject to the authority of the state court, which could revoke his

4

suspended sentence if he violated its good behavior condition, counted as a "criminal justice sentence" for purposes of adding two points pursuant to §4A1.1(d)). In *Brown*, the Fourth Circuit distinguished a Ninth Circuit case—*United States v. Kipp*, 10 F.3d 1463 (9th Cir. 1993)—upon which the appellant relied. In *Kipp*, the Ninth Circuit held that "a suspended sentence, standing alone without an accompanying term of probation is not a 'criminal justice sentence,'" for purposes of §4A1.1(d). However, in *United States v. Flanco-Flores*, 558 F.3d 978, 982 (9th Cir. 2009), the Ninth Circuit explained that central to the *Kipp* court's decision was the fact that "*no conditions* whatsoever were imposed on the defendant, including any probation-like components" (emphasis added). Here, the Commonwealth Attorney's Office confirmed that Ross complied with the conditions ordered at sentencing by the required date, meaning that unlike the defendant in *Kipp*, Ross was indeed subject to conditions. Thus, she should receive two additional criminal history points for the 2017 conviction given that her bank fraud scheme continued through 2020.

Based on a total offense level of 19 and Criminal History Category III, the recommended guideline imprisonment range is 33 months to 41 months. PSR ¶ 106. The recommended fine range is $10,000 to $100,000.

### III. The 18 U.S.C. § 3553(a) Factors Support a Sentence at the Bottom of the Guidelines

The Court must impose a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational treatment. 18 U.S.C. § 3553(a)(2). The Court also must consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the sentencing range under the guidelines, any relevant

5

policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to the victims. 18 U.S.C. § 3553(a)(1)-(7).

### A. The Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense

The defendant's ongoing fraud upon her former employer was not a one-time or two-time mistake. Over the course of several years, she took advantage of the victim's trust in her by stealing repeatedly. Moreover, she did not even stop stealing once she was terminated. Instead, she initiated transfers from one of the victim's bank accounts to pay her credit card bill *after* she had been fired. Unfortunately, her criminal conduct caused the victim to experience a significant financial hardship. Repeatedly stealing from a small business is a particularly serious crime, especially when the scheme went on for multiple years and caused substantial financial hardship to the victim. A sentence of 33 months' imprisonment would reflect the nature, circumstances, and seriousness of the offense.

### B. The Need to Promote Respect for the Law and to Deter the Defendant and Others from This Type of Criminal Conduct

Although the defendant appears truly remorseful for repeatedly stealing from the victim, she has had numerous contacts with the criminal justice system. Despite those criminal contacts, she has not refrained from engaging in criminal behavior. Thus, in addition to promoting respect for the law and deterring other would-be embezzlers, a significant sentence is warranted to specifically deter the defendant from engaging in additional criminal conduct.

### C. The History and Circumstances of the Defendant

Sadly, drugs have played a large role in the defendant's life. PSR ¶ 78. The defendant confirmed as much when she told the presentence report writer that her drug use was "out of

control," and something she hid from everyone. PSR ¶ 79. Her criminal record also confirms how destructive drugs have been in her life, especially given that her bank fraud scheme seemed motivated by her drug addiction. PSR ¶ 44, 48, 53-54. Unfortunately, the defendant has never enrolled in inpatient substance abuse treatment. PSR ¶ 80-81. She would certainly benefit from programs offered by the Bureau of Prisons. *See* PSR ¶ 113-115.

Her numerous contacts with the criminal justice system do not counsel for a downward variance in this case. However, a sentence at the bottom of the guidelines range is appropriate given her acceptance of responsibility. Such a sentence would be sufficient but not greater than necessary to achieve the purposes of sentencing.

### D. Unwarranted Sentencing Disparities

The District of Columbia Circuit has recognized that there will "inevitably . . . [be] sentencing disparities and inequities that can be explained by little more than the identities of the sentencing judges." *United States v. Gardellini*, 545 F.3d 1089, 1096 (D.C. Cir. 2008); *see also United States v. Saez*, 444 F.3d 15, 19 (1st Cir. 2006) ("[W]ith different judges sentencing two defendants quite differently, there is no more reason to think that the first one was right than the second."). The Guidelines "reduce unwarranted federal sentencing disparities," *Freeman v. United States*, 564 U.S. 522, 525 (2011), by "creat[ing] a comprehensive sentencing scheme in which those who commit crimes of similar severity under similar conditions receive similar sentences." *Id.* at 533.

A sentencing court "necessarily g[ives] significant weight and consideration to the need to avoid unwarranted disparities" by "correctly calculat[ing] and carefully review[ing] the Guidelines range." *Gall v. United States*, 552 U.S. 38, 54 (2007). "[I]mposing a within-guidelines sentence is

the surest way to avoid unwarranted disparities." *United States v. White*, 737 F.3d 1121, 1145 (7th Cir. 2013). Accordingly, the government believes a sentence of 33 months, at the bottom of the guidelines, is appropriate.

### E.    Restitution and Forfeiture

The defendant agreed to the entry of a forfeiture money judgment against her in the amount of $320,000. The Court signed the consent order of forfeiture on April 1, 2021. ECF No. 9.

In addition to forfeiture, the defendant also should be ordered to pay restitution in the total amount of $320,000.

### CONCLUSION

WHEREFORE, for the foregoing reasons, the Court should sentence the Defendant to 33 months of imprisonment to be followed by three years of supervised release. Such a sentence would be sufficient but not greater than necessary to achieve the purposes of sentencing.

          Respectfully submitted,

          CHANNING D. PHILLIPS
          Acting United States Attorney
          for the District of Columbia

By:    */s/ Kondi J. Kleinman*
          KONDI J. KLEINMAN
          California Bar. No. 241277
          Assistant United States Attorney
          Fraud Section
          555 4th Street, N.W.
          Washington, D.C. 20530
          (202) 252-6887
          Kondi.Kleinman2@usdoj.gov